**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

JUSTIN H. PHILLIPS,

        *Plaintiff*,

v.

    No. 1:22-cv-09304-JSR

U.S. CENSUS BUREAU,

*Defendant*.

<u>**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND ................................................................................................. 1

ARGUMENT ..................................................................................................................... 4

    I.    Plaintiff's Attorneys are Eligible for and Entitled to Fees and Costs ................................. 5

        a.    Plaintiff is eligible for attorneys' fees because he substantially prevailed in the litigation by obtaining a judicial order in his favor and by a voluntary change in position by the Census Bureau. ....................................................................................................... 5

        b.    Plaintiff is entitled to fees because the *Pietrangelo* factors weigh in his favor. .............. 8

    II.    Plaintiff's Fees and Costs Sought Are Reasonable ....................................................... 11

        a.    Proposed hourly rates for Plaintiff's counsel are reasonable ........................................ 12

        b.    Counsel expended reasonable hours in the litigation .................................................... 15

        c.    Total fees incurred ...................................................................................................... 16

        d.    Total costs incurred ..................................................................................................... 16

CONCLUSION ................................................................................................................. 16

## TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

*Am. Oversight v. U.S. Dep't of Justice*,
   375 F. Supp. 3d 50 (D.D.C. 2019) ........................................................... 5

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany &*
   *Albany Cnty. Bd. of Elections*,
   522 F.3d 182 (2d Cir. 2008) ................................................... 11, 12, 16

*Blum v. Stenson*,
   465 U.S. 886 (1984) ........................................................................... 11

*Church of Scientology v. Harris*,
   653 F.2d 584 (D.C. Cir. 1981) ............................................................... 6

*Davy v. Cent. Intel. Agency*,
   456 F.3d 162 (D.C. Cir. 2006) ........................................................... 5, 10

*Farrar v. Hobby*,
   506 U.S. 103 (1992) ........................................................................... 12

*Grand Canyon Trust v. Bernardt*,
   947 F.3d 94 (D.C. Cir. 2020) ................................................................. 6

*Grant v. Martinez*,
   973 F.2d 96 (2d Cir. 1992) ................................................................... 15

*Info. Ctr. v. U. S. Dep't of Homeland Sec.*,
   811 F. Supp. 2d 216 (D.D.C. 2011) ....................................................... 6

*Jud. Watch, Inc. v. Fed. Bureau of Investigation*,
   522 F.3d 364 (D.C. Cir. 2008) ........................................................... 5, 6

*Kwoka v. International Revenue Service*,
   989 F.3d 1058 (D.C. Cir. 2021) ........................................................... 10

*LV v. N.Y. City Dep't of Educ.*,
   700 F. Supp. 2d 510 (S.D.N.Y. 2010) ................................................... 12

*N.Y. Times Co. v. Cent. Intel. Agency*,
   251 F. Supp. 3d 710 (S.D.N.Y. 2017) ............................................ *passim*

*People for the Ethical Treatment of Animals v. Nat'l Institutes of Health*,
   130 F. Supp. 3d 156 (D.D.C. 2015) ..................................................... 12

**Page(s)**

*Pietrangelo v. U.S. Army*,
 568 F.3d 341 (2d Cir. 2009) ..............................................................................*passim*

*Pub. Citizen Health Res. Grp. v. Young*,
 909 F.2d 546 (D.C. Cir. 1990) .......................................................................... 6

*Simmons v. N.Y.C. Transit Auth.*,
 575 F.3d 170 (2d Cir. 2009) ............................................................................. 5

*Warren v. Colvin*,
 744 F.3d 841 (2d Cir. 2014) ............................................................................. 7

*Wilson v. Fed. Bureau of Investigation*, 1:20-cv-10324,
 2022 U.S. Dist. LEXIS 188389 (S.D.N.Y. Oct. 14, 2022).............................. 5, 10

**Statutes**

5 U.S.C. § 552 ................................................................................................... 1

5 U.S.C. § 552(a)(4)(E)(i) ................................................................................. 1, 5

5 U.S.C. § 552(a)(4)(E)(ii) ............................................................................... 4, 5

5 U.S.C. § 552(a)(6)(A)(i) ................................................................................ 2

5 U.S.C. § 552(a)(6)(B) .................................................................................... 2

5 U.S.C. § 552(b)(3) ......................................................................................... 2

13 U.S.C. § 9(a)(2).......................................................................................... 3, 9, 10

**Other Authorities**

John M. Abowd et al., *The 2020 Census Disclosure Avoidance System
TopDown Algorithm*, Harv. Data Sci. Rev. at 7, 15 (2022) ........................... 11

Bureau of Labor Statistics, *Inflation Calculator*,
https://www.bls.gov/data/inflation_calculator.htm........................................... 12, 14

Census Bureau, *Disclosure Avoidance for the 2020 Census: An Introduction*
 at 3 (2021) ....................................................................................................... 11

Michael Hawes, *Webinar: Differential Privacy 201 and the Topdown
Algorithm* (May 13, 2021), *transcript available at* https://www2.census.
gov/about/training-workshops/2021/2021-05-13-das-transcript.pdf ............... 9

**Page(s)**

Christopher T. Kenny et al., *The Use of Differential Privacy for Census Data and its Impact on Redistricting: The Case of the 2020 U.S. Census*, 7 Sci. Adv. 1, 1 (2021), https://imai.fas.harvard.edu/research/files/DAS.pdf ............................... 9

Christopher T. Kenny et al., *Evaluating Bias and Noise Induced by the US Census Bureau's Privacy Protection Methods*, ArVix (2023), https://arxiv.org/abs/2306.07521 ............................................................................................... 10

## INTRODUCTION

Plaintiff Dr. Justin H. Phillips ("Dr. Phillips" or "Plaintiff"), by his attorneys, respectfully submits this Memorandum of Law in support of his Motion for Attorneys' Fees and Costs pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*. Plaintiff brought this action to compel Defendant United States Bureau of the Census ("Census Bureau" or "Bureau") to respond to Plaintiff's FOIA request ("Request") and to produce two data files covered by the Request. The Bureau initially denied the Request. However, in response to this litigation, the Bureau voluntarily released a version of one of the two files and consented to a court order requiring it to release a version of the second file, which the Bureau subsequently did.

FOIA provides for an award of reasonable attorneys' fees and expenses to a plaintiff who has "substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). Plaintiff's attorneys amassed $94,552.13 in legal fees over the course of litigation. Dr. Phillips and his attorneys have also expended $649.70 in costs without reimbursement during this litigation.

Plaintiff substantially prevailed in his litigation against Defendant by obtaining complete relief through a judicial order and a voluntary change in position by the Census Bureau. Plaintiff is eligible for and entitled to an award of attorneys' fees and expenses. Plaintiff therefore seeks reasonable attorneys' fees in the amount of $94,552.13 and reasonable expenses in the amount of $649.70.

## FACTUAL BACKGROUND

### I.      Dr. Phillips's FOIA Request

Dr. Justin H. Phillips is a Professor of Political Science and Chair of the Department at Columbia University. Compl. ¶ 8, ECF No. 1. Dr. Phillips's academic research relies on census data, including data about geographic units below the state level, to make accurate inferences

about the population. On July 7, 2022, Dr. Phillips submitted the Request to the Census Bureau,

seeking (1) the privacy protected noisy measurements file for the 2020 Census ("2020 NMF"),

and (2) the privacy protected noisy measurements file demonstration data pulled from the 2010

Census ("2010 NMF," and together with the 2020 NMF, the "NMFs"). *Id.* ¶ 41. Plaintiff's

request was approved for expedited processing. Answer ¶ 6, ECF No. 12.

## II.     The Bureau's Delay, About Face, and Production of the Requested Files

Despite granting Dr. Phillips' request for expedited processing, it took 133 days and the

filing of this lawsuit for the Bureau to respond to Dr. Phillips' Request. Stipulation and Order of

Dismissal at 1 (Apr. 10, 2023), ECF No. 20 (hereinafter "Stip and Order"). FOIA obligated the

Bureau to decide on Plaintiff's request within twenty business days and to immediately inform

him of the decision. 5 U.S.C. § 552(a)(6)(A)(i). The Bureau failed to comply with this obligation

or invoke any available extensions contemplated by FOIA. Even if the Bureau had invoked all

extensions, it would have been obligated to decide within forty business days, which it also

failed to do. 5 U.S.C. § 552(a)(6)(B).

To remedy the Bureau's failure to comply with applicable time limit provisions under

FOIA, Plaintiff filed this action on October 31, 2022, seeking to compel the Bureau to issue a

determination on the Request and to release the responsive records. *See* Compl.

On December 1, 2022—after this litigation commenced, and almost five months after the

Request—Bureau finally issued its initial determination letter, denying the Request. The

determination letter stated that the Bureau had conducted a search for the 2010 NMF

Demonstration Data, but those data had been destroyed. *See* Stip. and Order at 2. The

determination letter also informed Plaintiff that the Bureau was withholding the 2020

Redistricting NMF, claiming it was exempt from disclosure under FOIA Exemption 3, 5 U.S.C.

§ 552(b)(3), because its release was purportedly prohibited by the Census Act, 13 U.S.C.

§ 9(a)(2). *See* Stip. and Order at 2.

Following this denial of the Request, the Court convened a telephonic case management

conference on December 20, 2022. The Court heard argument regarding whether to allow

discovery in advance of the deadline for the Bureau's motion for summary judgment. At the

conclusion of the conference, the Court denied Dr. Phillips's request for pre-summary-judgment

discovery, without prejudice to any subsequent request to take discovery after the initial round of

summary judgment briefing. The Court also set a briefing schedule for the Bureau's anticipated

summary judgment motion, with the Bureau's opening brief due February 1, 2023, and

Plaintiff's responsive papers due February 15, 2023. *See* Minute Entry (Dec. 20, 2022), *as am.*

*by* Minute Entry (Jan. 9, 2023).

After the case management conference, Plaintiff's counsel began diligently working on

Plaintiff's opposition to the Bureau's anticipated motion for summary judgment. However, as the

Bureau's deadline to move for summary judgment approached, the Bureau began voluntarily

providing the very relief Plaintiff sought. On January 18, 2023, the Bureau's Data Stewardship

Executive Policy Committee ("DSEP") approved the development and release of a newly created

2010 Demonstration Data NMF. The Bureau published the 2010 Demonstration Data NMF on

April 3, 2023. Stip. and Order at 3.

On January 25, 2023, the Bureau's counsel informed Plaintiff that at an upcoming

meeting, DSEP would assess whether the 2020 NMF was in fact suitable for public release, thus

in practice reassessing the Bureau's assertion that the file was exempt from disclosure under

Exemption 3. In light of this upcoming meeting, the parties stipulated to, and the Court granted,

an extension of the deadline for all opening summary judgment motions until April 10, 2023.

Minute Entry (Jan. 26, 2023). After this modification to the schedule, Plaintiff continued

working on summary judgment briefing in the event that the Bureau refused to release the 2020

NMF or refused to do so within a reasonable timeframe.

On March 27, 2023, the Bureau authorized the public release of the 2020 NMF. Stip. and

Order at 3. The parties then entered into settlement discussions to resolve this action by setting a

stipulated, court-ordered deadline for the release of the 2020 NMF.

On April 10, 2023, the Court entered a Stipulation and Order of Dismissal requiring the

Census Bureau, no later than August 23, 2023, to either (1) publish the 2020 NMF in the form of

a "Research Data Product" that the Bureau planned to create, or (2) provide Plaintiff "an

unsupported file containing" the 2020 NMF. Stip and Order at 4.

Finally, on June 15, 2023—almost one year after Plaintiff submitted his FOIA Request,

and after burdening this Court and Plaintiff with the need for this litigation—the Bureau publicly

released the 2020 NMF as a Research Data Product. Thus, the final result of Dr. Phillips's FOIA

Request and this litigation is that (1) a recreated version of the 2010 NMF was publicly released

on January 18, 2023, and (2) the 2020 NMF was released on June 15, 2023.

## ARGUMENT

FOIA's fee-shifting provision allows courts to "assess against the United States

reasonable attorneys' fees and other costs reasonably incurred in any case under this section in

which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(ii). Courts evaluate

fee applications through a three-step process. *N.Y. Times Co. v. Cent. Intel. Agency*, 251 F. Supp.

3d 710, 713 (S.D.N.Y. 2017). First, plaintiffs must demonstrate their eligibility for attorneys'

fees and litigation costs. *Id.* Second, they must show that they are entitled to such fees and costs.

*Id.* Once the plaintiff has established that both eligibility and entitlement to fees and costs, the

court determines whether the fees and costs are "'presumptively reasonable' under the lodestar

approach generally applied to fee applications in the Second Circuit." *Id.* (citing *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)). Here, Plaintiff meets both threshold standards, and the requested fees are reasonable.

## I. Plaintiff's Attorneys are Eligible for and Entitled to Fees and Costs

### a. Plaintiff is eligible for attorneys' fees because he substantially prevailed in the litigation by obtaining a judicial order in his favor and by a voluntary change in position by the Census Bureau.

To satisfy the first step of FOIA's fee-shifting analysis, a plaintiff must demonstrate eligibility by showing they have "substantially prevailed" in their lawsuit. *See Pietrangelo v. U.S. Army*, 568 F.3d 341, 343 (2d Cir. 2009) (per curiam) (quoting 5 U.S.C. § 552(a)(4)(E)(i)). A complainant has substantially prevailed if they obtain judicial relief through "(I) a judicial order . . . *or* (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii) (emphasis added). Here, Plaintiff has substantially prevailed under either standard.

Relief through a judicial order applies when there is a "judicially sanctioned change in the legal relationship between the parties" awarding some relief to the plaintiff. *Am. Oversight v. U.S. Dep't of Justice*, 375 F. Supp. 3d 50, 61 (D.D.C. 2019); *accord* Report and Recommendation, *Wilson v. Fed. Bureau of Investigation*, No. 1:20-cv-10324, 2022 U.S. Dist. LEXIS 188389, at *8 (S.D.N.Y. Oct. 14, 2022). A stipulated order directing the agency to produce any documents by a date certain fulfills this change in the legal relationship. *See Davy v. Cent. Intel. Agency*, 456 F.3d 162, 165-67 (D.C. Cir. 2006); *see also Jud. Watch, Inc. v. Fed. Bureau of Investigation*, 522 F.3d 364, 367-68 (D.C. Cir. 2008) (finding no functional difference between a joint stipulation and a settlement agreement enforced through consent decree).

This Court's Stipulation and Order of Dismissal required the Bureau to produce the 2020 NMF as either a Research Data Product or an unsupported file by August 23, 2023. Stip and

Order at 4. The stipulation changed the legal relationship between Plaintiff and the Bureau by ensuring the documents sought in Plaintiff's Request would be obtained. Had the Census Bureau failed to release the file in accordance with the Stipulation and Order, the Bureau would have faced consequences including an order of contempt. *See Jud. Watch*, 522 F.3d at 367-68, 370 (finding judicially sanctioned change in a legal relationship where joint stipulation made FBI "subject to contempt" if it failed to make timely disclosure). Therefore, by obtaining the Stipulation and Order of Dismissal from this Court, Plaintiff substantially prevailed and is eligible for attorneys' fees.

Plaintiff also obtained relief through a voluntary change in position when the Census Bureau publicly released both the 2020 NMF and a new version of the 2010 NMF, the original version of which had been deleted. A voluntary change in position occurs when "the institution and prosecution of the litigation cause[d] the agency to release the documents obtained." *Grand Canyon Trust v. Bernardt*, 947 F.3d 94, 97 (D.C. Cir. 2020) (per curiam) (*quoting Church of Scientology v. Harris*, 653 F.2d 584, 587 (D.C. Cir. 1981)). A plaintiff must show that it is more probable than not that the government would not have released the requested records without their suit. *Id.* (quoting *Pub. Citizen Health Res. Grp. v. Young*, 909 F.2d 546, 550 (D.C. Cir. 1990)). Courts have found that litigation was the catalyst to agency compliance with FOIA obligations based on evidence that the agency was unresponsive to the FOIA request before litigation. *See Elec. Priv. Info. Ctr. v. U. S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 216, 221-22 (D.D.C. 2011) (awarding attorneys' fees where a lawsuit was filed following six months of agency unresponsiveness post-FOIA request).

6

Here, Plaintiff's FOIA Request went unaddressed for 133 days prior to this suit's filing.[1]

Such an extensive waiting period, despite Plaintiff's request being granted expedited review,

again indicates that the Bureau would not have released the data unless this lawsuit was pursued.

Moreover, when the Bureau eventually issued its final determination on December 1, 2022, it

initially denied release of both NMFs, stating that the 2010 NMF was unreleasable due to

destruction and that the 2020 NMF was exempt from release based on a legal theory relying on

FOIA Exemption 3 and the Census Act. The Bureau abandoned these flimsy positions once

faced with the prospect of having to defend them in summary judgment briefing.

It was only after continued prosecution of this FOIA action, and with the pressure of an

impending deadline to move for summary judgment, that the Bureau decided to recreate and

release a new version of the 2010 NMF and reversed its decision to not release the 2020 NMF,

abandoning its prior assertion that the material was exempt from disclosure under FOIA

Exemption 3. Stip and Order at 3-5. The Census Bureau's public release of both NMFs is a direct

result of Plaintiff's prosecution of this litigation.

The Bureau's initial denial of Plaintiff's request for the 2020 NMF based on an

unsupported exemption theory, following its public release of this data, is the exact scenario

Congress intended to avoid by amending the FOIA fee-shifting regime to include the catalyst

approach to fee eligibility. Specifically, "Congress intended this amendment to prevent federal

agencies from denying meritorious FOIA requests, only to voluntarily comply with a request on

the eve of trial to avoid liability for litigation costs." *Warren v. Colvin*, 744 F.3d 841, 845 (2d

---

[1] The Bureau sent an interim clarification letter to counsel for Plaintiff on November 17, 2022—
133 days after the FOIA request was filed (but only 18 days after Plaintiff filed his Complaint).
Stip. and Order at 1-2. The Bureau did not issue its final determination in response to the FOIA
Request until December 1, 2023—147 days after the FOIA Request was filed. *Id.*

Cir. 2014) (per curiam). Here, the Bureau's subsequent data release undercut its prior claim of exemption and showed that Plaintiff's Request had merit. Awarding fees and costs ensures Plaintiff's attorneys are fairly compensated for the time necessarily expended in ensuring the Census Bureau would fulfill its FOIA obligations.

### b.   Plaintiff is entitled to fees because the *Pietrangelo* factors weigh in his favor.

In the second step of the FOIA's fee-shifting analysis, courts apply a four-factor test to determine whether a plaintiff is entitled to fees and costs. *Pietrangelo*, 568 F.3d at 343. A court weighs "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) whether the Government had a reasonable basis for withholding requested information." *Id.* None of these factors is dispositive in the Second Circuit. *See N.Y. Times Co.*, 251 F. Supp. 3d at 714 (declining to allow the fourth factor to automatically prevail over the other three, independently weighing the factors instead). Nevertheless, Plaintiff satisfies all four factors.

### (i)   The Public Benefit Derived from the Release of the NMFs

First, the public benefit derived from releasing the NMFs is significant, as it allows researchers to probe the 2020 Census privacy protection system for bias. Compl. Ex. A at 3 (ECF No. 1-1) (citing Steven A. Ochoa & Terry Ao Minnis, *Preliminary Report: Impact Of Differential Privacy & The 2020 Census On Latinos, Asian Americans And Redistricting* 1-2, 5-6 (April 2021)), https://www.maldef.org/wp-content/uploads/2021/04/FINAL-MALDEF-AAJC-Differential-Privacy-Preliminary-Report-4.5.2021-1.pdf. Indeed, the Bureau itself has recognized that the NMFs would be useful for research purposes, given that it decided to release them as research products.

Access to the NMFs allows scholars like Dr. Phillips to evaluate whether the Census Bureau is appropriately balancing its dual mandates of producing useful data and protecting

census respondents' privacy. Federal law prohibits the Bureau from releasing any information that reveals the contents of any individual's census response. 13 U.S.C. § 9(a)(2). To manage privacy for the 2020 Census, the Bureau introduced a new two-phase algorithm designed to inject the data with random error to prevent published statistical information from being traced back to individual respondents. Michael Hawes, *Webinar: Differential Privacy 201 and the Topdown Algorithm* (May 13, 2021), *transcript available at*
https://www2.census.gov/about/training-workshops/2021/2021-05-13-das-transcript.pdf

Unfortunately, the Bureau's current privacy-protection method may have unintended harmful consequences. Professional researchers—including Dr. Phillips—are concerned that their research has been harmed because the algorithm's "post-processing" phase may have systematically inflated the census-reported populations of sparsely populated and *homogeneous areas while shrinking those with greater population density and diversity. See*, *e.g.*, Christopher T. Kenny et al., *The Use of Differential Privacy for Census Data and its Impact on Redistricting: The Case of the 2020 U.S. Census*, 7 Sci. Adv. 1, 1 (2021),
https://imai.fas.harvard.edu/research/files/DAS.pdf. This potential distortion in the 2020 Census would make the data less fit for use in Dr. Phillips's and other scholars' research. Further, the distortion could result in an inequitable distribution of political power and resources, likely harming racial minority groups. *Id.*

Before Plaintiff's litigation, the public had no way to know whether or how much distortion the post-processing phase added to the decennial census data because the Bureau had failed to release the intermediate data set that excludes the additional changes made during post-processing—i.e., the NMFs. Now that Plaintiff's litigation has caused the Bureau to release the necessary NMFs, those files can be examined by scholars. Indeed, academics have already

started publishing analyses of the files.  *See* Christopher T. Kenny et al., *Evaluating Bias and Noise Induced by the US Census Bureau's Privacy Protection Methods*, ArVix (2023), https://arxiv.org/abs/2306.07521. Notably, Dr. Phillips did not participate in this study, further evidencing the broad uses the data's release has for the academic community beyond Plaintiff's own work.

### (ii)      The Other *Pietrangelo* Factors Weigh in Plaintiffs' Favor

The second and third *Pietrangelo* factors are often considered together. *N.Y. Times Co.*, 251 F. Supp. 3d at 713-14. These factors generally favor scholars because "Congress did not intend for scholars . . . to forgo compensation when acting within the scope of their professional roles." *Davy*, 550 F.3d at 1161. In *Kwoka v. International Revenue Service*, 989 F.3d 1058, 1062 (D.C. Cir. 2021), the D.C. Circuit found these factors favored a professor who had requested records to assess whether the IRS fulfilled its FOIA requests in an efficient and effective manner. The plaintiff's "serious, scholarly interest" demonstrated by past research and her intent to use the records to research trends in FOIA requests and propose improvements to agency administration qualified as the "'public-interest oriented' scholarly endeavor that FOIA's fee provision exists to encourage." *Id.* at 1065. Similarly, Dr. Phillips is a scholar with no commercial interest in the data. The nature of his interest is academic and public-minded.

The fourth factor also weighs in Plaintiff's favor. The agency bears the burden to show a "reasonable basis for not disclosing the material until after the plaintiff filed suit." *Wilson*, U.S. Dist. LEXIS 188389, at *15; *see also Davy*, 550 F.3d at 1163. The Bureau invoked FOIA Exemption 3, Stip and Order at 2, which exempts disclosure of records made confidential by statute, because the Census Act prohibits the publication of data that can be used to identify any particular establishment or individual. *See* 13 U.S.C. § 9(a)(2). However, the Bureau's prior

statements all made clear that the 2020 NMF was privacy protected. *See, e.g.*, Census Bureau, *Disclosure Avoidance for the 2020 Census: An Introduction* at 3 (2021) (noting that "differentially private noise infusion offers quantifiable and provable confidentiality guarantees"); Hawes, *supra*, at 4 (statement of Michael Hawes, "the noisy measurement step is what protects privacy in the algorithm."); John M. Abowd et al., *The 2020 Census Disclosure Avoidance System TopDown Algorithm*, Harv. Data Sci. Rev. at 7, 15 (2022) (explaining the "Multivariate Discrete Gaussian Mechanism" that ensures that privacy is protected to a demonstrable degree).

The fact that the 2020 NMF was sufficiently privacy protected was confirmed when DSEP made its determination in March 2023 that the file could be released. Tellingly, the Bureau decided to release the recreated 2010 NMF and informed Plaintiff that it was considering releasing the 2020 NMF just before the Bureau would have been forced to defend its meritless Exemption 3 theory in summary judgment briefing.

For these reasons, Plaintiff substantially prevailed in the litigation and satisfies all four of the *Pietrangelo* factors, making him eligible for and entitled to payment of full attorneys' fees and litigation costs under the FOIA.

## II.     Plaintiff's Fees and Costs Sought Are Reasonable

The Second Circuit calculates attorneys' fees based on the "presumptively reasonable fee" standard. Under this method, courts consider the prevailing hourly rates for legal services in the district where the case was litigated multiplied by the total hours worked. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008). Courts set reasonable hourly rates based on whether "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895

n.11 (1984). Courts may use their discretion also to consider "the complexity and difficulty of

the case," "the available expertise and capacity of the client's [] counsel []," and "the resources

required to prosecute the case effectively." *Arbor Hill*, 522 F.3d at 184; *LV v. N.Y. City Dep't of

*Educ.*, 700 F. Supp. 2d 510, 515 (S.D.N.Y. 2010). The "degree of plaintiff's success is the 'most

critical factor' in determining the reasonableness of a fee award." *People for the Ethical*

*Treatment of Animals v. Nat'l Institutes of Health*, 130 F. Supp. 3d 156, 166 (D.D.C. 2015)

(quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).

> Plaintiff requests rates that are conservative and more than reasonable, given his
attorneys' experience levels and the prevailing rates for fee awards in the Southern District of
New York. The requested award is reasonable considering Plaintiff's success in obtaining access
to all of the data he requested pursuant to the FOIA. Accordingly, Plaintiff should be awarded
the requested attorney fees and litigation costs in full.

**a.  Proposed hourly rates for Plaintiff's counsel are reasonable.**

> As documented in their declarations, Plaintiff's attorneys' proposed hourly rates are
consistent with their experience level and prevailing rates in the Southern District. Indeed, the
requested rates are conservative. Two of Plaintiff's attorneys, for example, practice at a
commercial law firm, Selendy Gay Elsberg PLLC, and regularly charge rates well exceeding the
rates sought here.

> In *New York Times Co. v. CIA*, this court granted the plaintiffs their proposed hourly rates
in a FOIA fee award of "$650/hour for a seasoned FOIA litigator with 14 years' experience and
$400/hour for two junior attorneys." 251 F. Supp. 3d at 715. Adjusted for inflation from their
reasonableness in May 2017 to July 2023, these comport to rates of $811.90/hour and $499.63
per hour. *See* Bureau of Labor Statistics, *Inflation Calculator*,
https://www.bls.gov/data/inflation_calculator.htm. The government did not object to these rates

in *New York Times Co*. Plaintiff asks for comparable rates. In *New York Times Co.*, the "seasoned FOIA litigator" had been a lawyer for over 20 years and had spent 14 years litigating FOIA cases, while the "junior attorneys" had been out of law school for two and three years respectively. The rates awarded in that case have informed Plaintiff's request for hourly rates for the four attorneys that work on this case. Student interns from the Election Law Clinic at Harvard Law School also contributed many necessary hours to this case, but Plaintiff does not request a fee award to cover the hours expended by the clinical students.  The student hours expended, for which no fees are sought, reduced the total number of hours expended by the four attorneys in this action, making the fees sought all the more reasonable.

Jordan Goldstein graduated from Harvard Law School in 2002 and is a founding partner of Selendy Gay Elsberg PLLC ("SGE"). He is an experienced attorney who specializes in complex commercial litigation. Declaration of Jordan Goldstein (Aug. 11, 2023) ("Goldstein Decl."). Before co-founding SGE, Mr. Goldstein served in several roles in the public and private sectors, including as a partner at Quinn Emanuel Urquhart & Sullivan, LLP (2010 to 2018); Special Counsel to the Assistant Attorney General in the National Security Division of the U.S. Department of Justice ("DOJ") (2008-2009); Attorney Advisor in the Office of Legal Counsel at DOJ (2006-2008); and a law clerk to the Honorable Alex Kozinski, U.S. Court of Appeals for the Ninth Circuit (2005-2006). *Id.* Plaintiff seeks a rate of $811.90 per hour for Mr. Goldstein's work on this case. This rate is well below Mr. Goldstein's private billing rate and is consistent with this Court's application of fees in *New York Times Co*.

Ruth Greenwood graduated from Columbia Law School in 2009 and has maintained an active federal litigation practice in the years since then, including numerous voting rights and redistricting cases that rely on census data, and she was counsel on one FOIA enforcement case

against the Census Bureau in 2020. Declaration of Ruth Merewyn Greenwood (Aug. 11, 2023)

("Greenwood Decl.").  Plaintiff seeks $686.99 per hour for Ms. Greenwood's work on this case,

which is reflective of her years of experience and consistent with this court's award in *New York*

*Times Co.*[2]

Theresa J. Lee graduated from Yale Law School in 2011, and, after clerking for

Rosemary S. Pooler of the United States Court of Appeals for the Second Circuit, spent over 3

years practicing civil litigation in New York, before devoting her practice exclusively to voting

rights and democracy cases in federal and state courts. Declaration of Theresa J. Lee (Aug. 11,

2023) ("Lee Decl."). Plaintiff seeks $686.99 per hour for Ms. Lee's work on this case which is

reflective of her years of experience and consistent with this court's award in *New York Times*

*Co*. *See supra* n.2.

Jeffrey Zalesin is a 2019 graduate of Yale Law School and an associate at SGE, where

his practice focuses on complex commercial litigation. Not including this action, he has worked

on three litigation matters against the Census Bureau, two of which were FOIA actions.

Declaration of Jeffrey Zalesin (Aug. 11, 2023) ("Zalesin Decl."). Before joining SGE, Mr.

Zalesin clerked for Judge Christopher R. Cooper for the U.S. District Court for the District of

Columbia and worked at the nonprofit Campaign Legal Center, where his practice focused on

election-related litigation. *Id.* Plaintiff seeks $499.63 per hour for Mr. Zalesin's work on this

case, which is reflective of his years of experience, in particular with FOIA and census litigation;

well below his private billing rate; and consistent with this court's award in *New York Times Co*.

---

[2] Based on the court's award in *New York Times Co.*, a reasonable rate for an attorney of Ms. Greenwood and Ms. Lee's experience would have been $550/hour at that time. Adjusted for inflation from May 2017 to July 2023 leads to the rate of $686.99 per hour being reasonable today. *See* Bureau of Labor Statistics, Inflation Calculator, https://www.bls.gov/data/inflation_calculator.htm.

As documented in their declarations, Plaintiff's attorneys' proposed hourly rates are consistent with their experience level and prevailing rates in the Southern District of New York.

The Census Bureau's lack of response to Plaintiff's Request was successfully combatted through this litigation. Plaintiff received access to all documents requested in his FOIA Request and provided the public with important data for evaluating the 2020 Census and improving future censuses. This degree of success warrants a full award of Plaintiff's requested hourly rates.

### b.  Counsel expended reasonable hours in the litigation.

Plaintiff requests $94,729.74 for the attorneys' hours expended throughout this litigation. The detailed and contemporaneous time entries accompanying this memorandum of law are attached as exhibits to the accompanying declarations. *See* Goldstein Decl., Ex. 1; Greenwood Decl., Ex. 1; Lee Decl., Ex. 2; Zalesin Decl., Ex. 1. A summary of the total lodestar is attached as Exhibit 1 to the Lee Declaration. The reasonableness of the hours expended is based on the time in which the work was performed. *See Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) (declining to engage in "an *ex post facto* determination of whether attorney hours were necessary to the relief obtained").

Ensuring the Census Bureau complied with Plaintiff's Request and released the privacy protected NMFs for both the 2020 Census and the demonstration data from the 2010 Census required the full amount of time expended by his attorneys. The public release of the 2010 NMF, which had previously been deleted, showed that Plaintiff's litigation was a successful catalyst for the Bureau's recreation and subsequent release of this data. The Bureau's incorrect assertion that the 2020 NMF was exempt from disclosure unnecessarily extended this litigation. Accordingly, the Bureau should be responsible for the accrued attorneys' fees and costs from the full course of this litigation.

### c.  Total fees incurred

Under the presumptively reasonable fee standard, the total hours worked multiplied by each attorney's hourly fee is $94,729.74. *See Arbor Hill*, 522 F.3d at 190; Lee Decl., Ex. 1 (summary of lodestar records of each attorney).

### d.  Total costs incurred

Plaintiff is entitled to recover costs pursuant to the FOIA. *Pietrangelo*, 586 F.3d at 343 (awarding recovery of costs incurred during a FOIA action). Plaintiff incurred total costs in the amount of $649.70 in certified mail and filing fees in this action. Lee Decl., Ex. 3. He is entitled to recover that full amount.

## CONCLUSION

For the reasons explained above, Plaintiff respectfully requests an award of $95,379.44 in attorneys' fees and costs.

Dated: August 11, 2023

                                            Respectfully submitted,


*/s/ Jordan A. Goldstein*                    */s/ Theresa J. Lee*
Jordan A. Goldstein                          Theresa J. Lee
Jeffrey Zalesin                              Ruth Greenwood*
SELENDY GAY ELSBERG PLLC                      ELECTION LAW CLINIC
1290 Avenue of the Americas                  HARVARD LAW SCHOOL
New York, NY 10104                           6 Everett Street, Ste. 4105
(212) 390-9000                               Cambridge, MA 02138
jgoldstein@selendygay.com                    (617) 496-0370
jzalesin@selendygay.com                      thlee@law.harvard.edu
                                             rgreenwood@law.harvard.edu

                                             * Admitted *pro hac vice*